# McWHORTER and BALDWIN *vs.* McMAHAN.

An execution of a contract for the sale of real estate, owned by a partnership firm, by one partner in the partnership name, and so executed in the presence and with the approbation and consent of the other partner, is a sufficient memorandum in writing to take it out of the statute of frauds.

Such an execution would be sufficient to enable the vendee to enforce a specific performance thereof as against the partnership vendors, and is sufficient to enable the vendors to enforce it as against the vendee.

Whether a specific performance of a contract for the sale of lands, signed by the defendant but not by the complainant, can be enforced, *quere.* The solution probably depends upon the circumstances of of each case.

When there is a written contract for the sale of lands, containing a mere general description of the lands, and a deed is tendered in pursuance of such contract, describing the lands specifically, it should be proved that the lands described in the deed are the same lands contemplated by the contract ; but if this is not made an objection in the pleadings, it may be referred to a master to whom the reference as to title is made, to take proofs as to the identity of the lands described in the contract and deed.

THIS is a bill for the specific performance of a contract for the sale of lands, filed by the vendors against the purchaser. The complainants were partners in mercantile business, and tenants in common of the store and the appurtenances in which they transacted their business. On the 2d of February, 1839, they entered into a contract with the defendant of which the following is a copy.

" In consideration of two thousand seven hundred " and fifty dollars, to be paid to us as herein after " mentioned, we hereby agree to sell to James " McMahan the brick store which we now occupy, " together with the lot in the rear or lane, subject to

" such restrictions as are mentioned in a certain Dec. 1840.
" writing passed between Joshua R. Babcock, John
" McWhorter, Norman Kibbee, Aaron Rumsey and
" others, in reference to keeping open a lane, as
" therein mentioned ; the said store being fifty-six
" feet in front and rear, and extending to the centre
" of the wall on each of the sides respectively, and
" to be paid for as follows, viz. one third of the
" whole amount on the first day of May next, and
" the other two thirds in three equal annual pay-
" ments, with the annual interest, and payable on
" the first day of May, 1840, 1841, 1842. A deed
" to be executed by the selling party, within four
" days, and the said McMahan to give his bond and
" mortgage for the residue as above mentioned.
" The selling party to give possession immediately
" or pay rent at the rate of $225 per annum until
" the 1st of May next.

McWHORTER & BALDWIN,
JAMES McMAHAN.

February 2, 1839.

The signature of the complainants to such con-
tract was made by Baldwin.   On the 6th February,
1839, the complainants, with their wives, executed a
deed to the defendant, of the premises, fully descri-
bed, alleged by them to be the same premises men-
tioned in the contract, and prepared a bond and
mortgage for execution by the defendant, and sent
such papers to the defendant by a commissioner of
deeds.   The defendant on that day was too unwell
to attend to business, and by his consent all the pa-
pers were left with him.   On the 11th of February,
the defendant acknowledged the mortgage and exe-
cuted the bond before the commissioner, but retained

51

them both in his own possession.   Only one copy of the contract was made, and that was retained by the complainants, who, however, sent the defendant a copy of it soon after by their clerk.   The complainants gave notice to the defendant, that they would rent the store until May 1, 1839, at the rate of $225 per annum.   On the 1st May, the defendant was absent on a journey, and on that day the complainants sent to the defendant's house, and offered to his son-in-law the amount of rent, with the keys of the store, and notice that the complainants surrendered the premises to the defendant.

*C. H. S. Williams*, for complainants.

*A. Dixon*, for defendant.

THE VICE CHANCELLOR.   The first objection made by the defendant is, that there is not a sufficient execution of the contract on the part of the complainants within the statute of frauds.   The complainants were tenants in common of the premises, and to make a contract on their part binding and valid within the statute, some note or memorandum of it in writing, executed by both the complainants, or their authorised agents, must be shewn. In this case, the contract produced is only signed by one of the complainants, using the name of both. The fact that the complainants were mercantile partners, and that the name of the partnership was used in the signature to this instrument cannot of course aid the complainants.   Though they were mercantile partners, and owned the store together, that circumstance did not of itself confer upon one partner the right of making an agreement for the sale of

real estate in the partnership name, which should
be binding upon the other partner. As to this real
estate they were simply tenants in common. The
partnership name is of no further use in the contract
than as simply a *descriptio personæ* or identification
of the vendors.

The knowledge which we have of the circumstances under which the contract was executed, is derived from the testimony of one of the complainants witnesses. This witness was present at the store of the complainants, with both of the complainants and the defendant. A conversation was had between them in relation to the sale and purchase of the store. After some conversation, the parties in this cause, all three of them went together into the counting room, where the witness could hear them converse, but could not distinctly hear what was said. They came again into the store room with the contract executed as it now appears; and the defendant, soon after, was taken by the complainant, McWhorter, into the chambers and cellar of the store, to shew them to the defendant. The statute in relation to contracts for the sale of land, provides that " every contract for the sale of any " lands, or any interest in lands, shall be void, unless " the contract, or some note or memorandum thereof, " expressing the consideration be in writing, and be " subscribed by the party by whom the sale is to " be made," and further, that " every instrument re- " quired to be subscribed by any party" (as above) " may be subscribed by the agent of such party law- " fully authorised." 2 Rev. Stat. old ed. page 135, Sec. 8, 9. Now under the testimony of the witness before referred to, it is hardly possible to come to any

Dec. 1840. other reasonable conclusion, than that both of the
complainants were together with the defendant in
McWhorter
and Baldwin the counting room, during the whole time of their
v. absence from the store. During that time, also, the
McMahan.
writing must have been drawn and signed. It is
also the reasonable, and almost irresistible inference,
that it must have been signed by Baldwin, in the
presence of, and with the consent of his co-tenant,
McWhorter.

As long as the courts hold, as they have uniformly
done, that a memorandum made by an auctioneer, is
a sufficient memorandum in writing, under the sta-
tute, I should *a fortiori*, deem the signature sufficient.
(See Clason vs. Bailey in error, 14 Johns'. Rep. 484,
and the cases there cited by Chancellor Kent.) If
the auctioneer can thus, by the mere bid, be deemed
the authorised agent to make the necessary memo-
randum in writing, certainly in this case, when the
party must be presumed to stand by and direct an-
other to sign his name, the authority must be dee-
med to be sufficient. In other words under the cir-
cumstances of this case, Balwin must be held to be
the lawfully authorised agent to affix McWhorter's
name to the contract. The whole conversation was
in relation to their common property ; both parties
were present during the whole time—during the
drawing and signing of the papers ; and McWhorter,
who did not actually sign with his own hand, imme-
diately after the contract was signed, took pains to
show the defendant the chambers and cellar of the
store he had just then contracted to purchase. All
this is controlling with me, to lead me to the conclu-
sion that McWhorter's name was signed to the con-
tract by Baldwin, by the direction, and with the con-

sent of McWhorter. This is sufficient to take it
out of the statute, and to obviate this objection made
by the defendant.

It is quite apparent to me, that under the testimony, there is a sufficient contract in writing on the part of both the complainants to entitle the defendant to a specific performance as against the complainants, if he should choose to claim advantage of the contract so executed. This gives to the contract that mutuality which the defendant contends it wants, and makes under my construction, both parties reciprocally liable.

Having come to this conclusion, it is unnecessary to consider another question which the case presents, viz. that the contract having been in writing, and signed by the defendant, it can be enforced as against him whether it is signed by the complainants or not. Upon this point there are various and, perhaps upon principle, somewhat conflicting authorities, see 14 Johns'. Rep. 484 ; 3 Johns'. Cases, 60 ; 2 Caines, 117; 2 Bos. and Pull. 238 ; 4 Bos. and Pull. 252 : 6 East, 307; 3 Taunton, 169 ; 1 Eq. case abridged, 21 ; 1 Vesey, 82 ; 7 Vesey, 275 ; 9 Vesey, 351 ; 1 Sch. and Lef. 13 . 11 Vesey, 592 ; 3 Vesey and Beames, 192 ; 2 Ball and Beatty, 370 ; 2 Dess. 172 ; 5 Day, 67 ; 2 Hoveden on Fraud, 8, 9 ; 2 Jac. and Walk. 428 ; but upon examining these and other authorities, I am convinced that an agreement drawn as this is, would not be binding unless signed by both parties to it, at least not upon the defendant, unless it was signed by the complainants as well as the defendant.

Specific performance of contracts in relation to the sale of lands, is a fruitful head of equity jurisdic-

tion.   In all cases the party claiming the perform-ance must present a case fair, just and reasonable ; the contract to be performed must be mutual, upon adequate consideration, free from fraud, misrepresentation or surprise ; and it must not be had unconscionable or unequal.   The relief is always in the discretion of the court, but this discretion is a sound legal discretion.   A hard or unconscionable bargain the court will not interfere with, but leave the parties to their remedy at law.   3 Cowen, 445.   Contracts are not specifically enforced at the instance of the vendor, as readily as at the instance of the vendee ; as when applied for by the vendor he can be better compensated in damages than the vendee, who may desire to acquire a particular estate.

Still, when the bargain is fair, mutual, and free from fraud, it is every day's practice to decree a specific performance in favor of the vendor.   In any case the party who applies to compel a specific performance, must show that he has performed on his part, or that he has been able and willing and still is ready to perform.   1 McCord Ch. 39.

In this case the complainants executed a deed within the time, and sent it to the defendant, who retained it.   The defendant, however, insists that there is no evidence that he has refused to perform.

The proof is that the complainants executed a deed, and that it was delivered to the defendant—that the defendant subsequently executed a bond and mortgage, but retained them in his own possession.   There is no farther proof ; and from aught that appears from the testimony, the defendant has both the deed and bond and mortgage now in his own possession.   The complainants could not be called upon to prove a

negative, viz. that the defendant did not pay and did not deliver the bond and mortgage, and the defendant has chosen to offer no proof upon the subject. Under this state of the proof I am warranted in coming to the conclusion that the defendant has refused to comply with his contract.

Upon another point presented by the case, however, I have more doubt. The contract is general in its terms, as to the description of the property, while the deed is specific in description of the property; and the complainants have offered no proof that the property conveyed by the deed, is the same as that contemplated by the contract. It may well happen that all the parties, living in the same village, may know the specific property contemplated to be conveyed, from the general description of it in the contract; and as to them, the contract may have been sufficiently definite. They would also know whether the deed executed by the complainants, conveyed the same property contemplated to be conveyed; but it would have been more prudent, at least, to satisfy the court by testimony, that such was the fact.

This is the more important, as the premises mentioned in the contract are described in that instrument to be " fifty-six feet in front and rear, and extending to the centre of the walls on each of the sides of the store respectively." This would ordinarily, but perhaps not necessarily, convey the idea that the store was fifty-six feet wide, whereas the deed conveys a store only nineteen feet wide. There is an ambiguity of expression in the contract, which the parties, being upon the spot, may have perfectly well understood, but which the court cannot, without the intervention of testimony. But this objection can be re-

Dec. 1840.

medied.    There is a suggestion that the premises are incumbered, and it must therefore be referred to a master to report upon the title; and the master can in the same reference take proof as to the identity of the property described in the contract and the deed.

The order must be that the contract be specifically executed by the defendant, in case the complainants can give a good title, and for a reference to a master pursuant to the above suggestions.    All farther questions to be reserved until the coming in of the master's report.